with this case. And so now we'll hear the case of Cutler Bay Apartments versus the Bank of America. Cutler Bay Apartments, LLC v. Bank of America, LLC, I think we are settled now. Good morning. Good morning. May it please the Court. My name is Giacomo Bosse. I am here on behalf of the appellants. For simplicity, I call them Cutler. There's two appellants but for all intents and purposes, they are identical in this case. This case is about two motions for summary judgment, a motion and a crossmotion. Bank of America motion for summary judgment was granted. Cutler's motion was denied. The motions are about a simple issue. There is a contract. It's a loan application and the loan application contains an indemnification provision. It's quoted in full on page 17 of our reply brief. It's also contained in the loan application. I would like to start by reading that because I think that the confusion in the lower court was based on not reading it correctly. We do acknowledge, however, that there is a second basis for the district court order of summary judgment in favor of Bank of America. We have to prevail on both. The second basis is actually the loan application is not a contract. There is no contract in this case and therefore, there are no obligations for Bank of America including the absence of the indemnification provision. We have to prevail on both. Thus, I'd like to start by reading the indemnification provision and it says that Bank of America may from time to time enter into an agreement under which Bank of America provides compensation to a broker who brought about the issuance of the loan application or the consideration of or making of the proposed loan. In exchange for that, Bank of America agrees to indemnify and hold harmless a pendant from and against any and all claims, demands, and liability arising under such agreement. So, it's really three questions. There's three prongs that I have that Cutler has to meet in order to be indemnified under this clause. The first prong is, was there an agreement by Bank of America to compensate a third-party broker? The answer is yes. There's no dispute. It's not disputed by Bank of America. It wasn't even disputed by the findings of the trial court. CLD was a third-party broker and CLD entering into an agreement, we'll call it a side deal because it was unknown to my client. And the side deal was to compensate CLD 0.5% of the mortgage amount if the loan with Bank of America closed. So, the first prong is met. There is an agreement exactly like the agreement that's required in the brokerage provision where the indemnification is provided for. The second prong is, was there a claim by this broker against Cutler? Was there a claim? Yes, there was a claim. In fact, CLD filed an arbitration against my client. So we get to the third prong, and the third prong is whether the claim by CLD arose under the side agreement. And here is where the confusion is. The answer to the question is yes. The claim by CLD in fact arose under the side deal to the extent that CLD sought the 0.5% that Bank of America promised CLD in the arbitration. It doesn't matter what legal basis, what legal theory, CLD decided to prosecute. They filed for breach of the agreement between my client and CLD. They could have filed whatever they wanted. They could have filed for fraud. So long as in that procedure they made, and I quote, a claim, demand, or created a liability against Cutler. But no liability was found against CLD in the arbitration. So we prevailed. That's exactly correct. We did prevail, but there is extensive case law saying under an indemnification provision you get attorney's fees and costs, because it's not a... It's a case of contract interpretation. I mean, you know, all of those cases interpret different contract provisions. What's the language in the contract that says Bank of America will pay attorney's fees? It's the language that says Bank of America agrees to indemnify and hold harmless. The only way we can be fully indemnified, and again, there is case law applying exactly to this language, exactly to the language of indemnifying or harmless. The only way you indemnify and hold harmless a party is if you, in fact, make them whole even on the attorney's fees. And to that point, Judge, if I may, had we lost, Bank of America would have claimed you were wrong. We shall not indemnify you because you were wrong. They sued you. They won. They prevailed. They're right. What we did by winning is we reduced the exposure of Bank of America. We did the best we could. And as to the extent of... And there is an argument. It's a very fine argument by counsel. And the argument is, look, but you have been sued for another amount just as well, so why should you get the full amount? Well, we should, but it's not an issue now because we never moved for summary judgment as to the entirety. We just moved as to summary judgment. Was there any contract between Bank of America and CLD? The only contract that we are aware of, it's the side deal. So they promised by Bank of America to pay CLD 0.5% if this loan closes. Was there a contract between those two parties? That is a contract, Your Honor. What state law governs that contract? Which state? I don't know because it's not a contract to which Cutler was privy. Yeah, but you've been litigating over that contract. I mean, we're going to have to figure that out, so what would you have us do? Are we talking about the... The contract between CLD and the one you just described to Judge Grant? The side deal. I have... Frankly, I have no idea it would be either Georgia law or New York law because CLD was based in Atlanta, and so depending on contract interpretation, this agreement that was never... The agreement was never memorialized. It was an oral agreement, and when we cited the position by Bank of America Corporate Rec, we said, I'm not even sure if it was 0.25% or 0.5%, but I'm sure there was any such agreement. So the problem is our client didn't know about it. We were not told. We discovered during the arbitration that the reason why CLD was suing us not for 0.5%, but for 1%, double the amount, was because Bank of America had made them a promise. But after... As I understand your argument, and I'm asking because maybe I'm not understanding it, you say the agency-principal relationship between CLD and Bank of America grew out of that agreement. That agency relationship is irrelevant. I think we did not brief that properly, and I want to clarify that. Yeah, that's a surprise. I understand. I apologize for that. Let me clarify this point. Whether CLD was or was not the agent of Bank of America is wholly irrelevant in this case. The only thing that's relevant is the three prongs that I went through. This indemnification provision does not require CLD to be the agent for Bank of America for the indemnification to be triggered. It's irrelevant. The only thing that was relevant was that we prevailed in the arbitration because in the CLD-Cattler agreement, CLD told Cattler, I am the agent of Bank of America. So vis-a-vis Cattler, CLD said I was the agent of Bank of America, and therefore the arbitrator said, if you're the agent of Bank of America, you're bound by the agreement with Bank of America. And when Bank of America exercised the carve-out of the exclusivity, you were bound by that same carve-out. That was the only relevance of this. It was relevant in the arbitration as to why we prevailed. It doesn't matter whether Bank of America had, in fact, an agreement with CLD that CLD was or was not their agent. It doesn't matter. So long as Bank of America made a promise to CLD to compensate them for 0.5% and then CLD turned around and sued my client, Cattler, for that 0.5%. That is all that is required for the indemnification to apply. Nothing else. In this provision that you just read to us, you say that put a duty on the Bank of America to cooperate with your client in this arbitration proceeding. No, I don't think that's what it is. I think Bank of America presented... Well, what does? I mean... I think the strongest argument under the good faith and fair dealing is that Bank of America testified that they do not issue commitment letters. That is, even though... You're not travelling under contract language. You're travelling under this good faith and fair dealing requirement. ...connected to contract language. In other words, the first page of the loan application says, I am Bank of America and this loan will come to issue only once we issue a commitment letter. And before we do that, and we have no obligation to do it, but before we do that, we will not... This loan will not become final. You know, obviously you know a lot more about this case than I do, but so your client initiates this arbitration with CLD, right? No, CLD sues our client. OK. Like I said, you know more about this case than I do. But anyway, I mean, now you're seeking reimbursement based on the contract, right? Correct. OK, I just don't see anywhere in the contract where it says we're going to cover you if you incur cost or attorney's fees in this arbitration proceeding. I understand, Your Honour. I submit again, and we submitted case law in support, that the reimbursement for attorney's fees is available under the language that says indemnify and hold the harness. All right. I understand your argument. What about the fact that the agreement between Cutler and Bank of America says that the application did not impose any obligation on Bank of America unless the loan issued? So that is the second basis of the finding by the magistrate and the order by the lower court. There is a number of reasons why this is wrong. This is wrong on the merits, but it's also wrong procedurally. Procedurally, because Bank of America never presented that argument. It was not an affirmative defense. It was not in the motion for judgment on the pleadings. That's one other question I had. Is formation of a contract really an affirmative defense, or is it just something that the party asserting the contract has to show in the first place? It is an affirmative defense. Condition proceeding to formation of a contract is a specific affirmative defense that needs to be pled, and we cited two cases in support in our brief. But not only that. The problem is this. When Bank of America finds a motion for judgment on the pleadings, and in the motion for judgment on the pleadings, they argue there is a valid indemnification provision. It's enforceable, but it doesn't apply to the case at issue because the legal basis of CLD's arbitration against your client was not a breach of the side deal, but it was a breach of your agreement with Bank of America, with CLD, then they have waived the ability to say there is no enforceable provision. And they didn't make that argument. The first time the argument comes up is sua sponte by the magistrate judge, but the magistrate judge to do that needs two. Number one, raise an affirmative defense that has not been raised. Number two, go over a fact that has been admitted by Bank of America and disregard it, and then completely disregard the text of this agreement. I'll tell you why briefly, and this is the most important argument on the merits. You cannot have a contract when one party has no obligations whatsoever. That's illusory. If that is the case, then return the consideration we paid. We paid $70,000 under this, and if we take the legal interpretation, which is under this document, Bank of America has no obligation whatsoever, then there is no contract, then consideration needs to be returned. Thank you. We'll be happy to hear from you on rebuttal. Mr. Pierce. May it please the court. My name is Alan Pierce. I'm with Lever, Gonzalez, and Portuando. We represent the employee Bank of America. Excuse me. As this court, I'm sure, is aware, indemnification arises from the equitable principle that a wrongdoer ought to bear the responsibility. And in this case, quite simply, what we have is an alleged wrongdoer suing a party who's done nothing wrong to be compensated for defending against their alleged breach of a contract that the innocent party was not a party to. That's not indemnification. It's something different. And what we have here is, and I think the court recognizes the fact that we have two separate contracts. We have an agreement, or a loan application, between the appellants and Bank of America. And then separate from that was the exclusive brokerage agreements that the appellants entered into with CLD. Banner was not a party to the brokerage agreement. They're not mentioned. Anybody named didn't have any knowledge of it. So essentially, what we have is the appellants are attempting to take the indemnity provision from the loan applications and apply it to absolve themselves from the expenses they incurred in defending against their breach of the exclusivity clause that they signed with the broker, CLD. And that is not something that the bank had any knowledge of or ever would have agreed to indemnify them for. And the reason being is because going back to the loan applications and this brokerage fees provision, the indemnity provision, which appellants made an incomplete reading of. And I'd like to clarify that for just a moment, because I think it makes a big difference in this case. This indemnity provision is a mutual indemnity provision. And at the beginning, it starts by saying the borrowers agreed essentially to pay whatever fees they agreed to pay a broker. And then in turn, Bank of America agreed to pay whatever fees it agreed to pay a broker. And in our case, we agreed to pay a finder's fee if this loan closed. That was it. Loan never closed. Is the full text of the provision on a particular page of your brief? The full text is in the appellant's reply brief. I don't believe that we have the, I don't believe we block quoted the whole thing in our answer brief, Judge, but. I've got it in their reply brief. It's page 17 of the reply brief, I'm told. 17, correct. What about the fact that it begins with, by execution of this application? I certainly understand that. I think one of the arguments you've made is that this only becomes effective if the loan is made. But that language is in some tension with that, I think. Correct, well, the letter agreement that the loan applications were delivered with included the clause in there that the magistrate looked at. And it said that essentially, unless the loan closes, no, Banner doesn't have any obligations to lend or do anything under the agreement. And so what we have here is this is essentially an agreement to evaluate whether or not we will approve and close a loan at a future date. And there are provisions, there are binding obligations on both parties in terms of the due diligence and underwriting tasks that take place to determine whether or not the bank is going to assume the risk and loan an amount, I mean, we're talking tens of millions of dollars. So the bank, there's an extensive amount of research the bank has to do, soil testing, zoning, insurance requirements, site inspections, is this property sufficient collateral for this amount of a loan. And those are the tasks that the bank was undertaking. And part of the problem that comes, I think that arises in this case is that the exclusive brokerage agreement that the appellant signed with CLD did not include a carve out that allowed the appellants to continue their discussions with Bank United for the same refinancing. We did include the carve out in our language. And so that's why we're not making an issue of the fact that this loan application terminated when the appellants got financing ultimately from Bank United. So the carve out I think is the key here because the arbitration out of the exclusive brokerage agreement came from the fact that they circumvented CLD and got the financing from Bank United without them. That was the basis for the arbitration. That was a breach of their exclusivity clause which provided for CLD's ability to recover double the amount of potential income losses. So that is the basis. That clause was the basis for the claim and the arbitration. It had nothing to do with an agreement with Banner. And the fact that they saw it as part of their, they broke up their damages as we were gonna get half a percent from you and half a percent from Bank of America. But the only way that they could claim entitlement to the half a percent from Bank of America was because that was potential income to them that never was earned because this loan with Banner never closed. So and I know that they've made arguments that the fact that the loan didn't close is not something that stated or applied to the identification but it has to be because the only agreement that Bank of America made to CLD the broker was to pay them half a point if this loan closed and it's undisputed that it never did. And the reason it never did was because they didn't provide, the opponents did not provide all of the information that the bank needed to complete its due diligence and underwriting tasks which it was obligated to do under the loan applications and then obtain financing from Bank United without using CLD. So we didn't have any say, we don't have any knowledge or any involvement in their agreement with the broker and that's what that suit was about. So our argument has all along been this loan didn't close and this indemnity clause does not apply to the situation you are seeking compensation for because it had nothing to do with our agreement to pay a finder's fee if the loan closed and it didn't. So for us, that's the end of the line and as far as our obligations go, the loan didn't close, we don't owe anybody any money for this and that's kind of the end of the story. We did, there's no claim and there's no indication that the bank did not perform all of its due diligence, did not use the deposits for the purposes that they were intended which was for consultants for all of those inspections and appraisals and things of that nature. So we're kind of at a loss on this one but our stance is that we're not obligated to cover them for expenses that they incurred in defending against the breach of a completely separate contract. And I think that's, I don't know how much or I can say it, I hope that helps clarify some things. If you have any other questions, we're happy to talk and address anything else but. I think we're good, thank you. Then we'll rely on the arguments and the authority cited in our brief and request that this court affirm the judgment. Thank you. Thank you. Page seven of docket entry 72 which is the amended report and recommendation by the magistrate judge. The last sentence of the factual finding and I quote is Banna's position that the broker's claim for the 0.5% fee against plaintiffs did not arise under Banna's agreement with the broker to pay the 0.5% fee is not tenable. This finding of fact should have warranted summary judgment in my client's favor. That is all that the court needed to find that there is an agreement between CLD and Bank of America, the CLD sued my client and that the claim that CLD made arose out of the agreement with Bank of America. The magistrate judge made that finding and should have entered summary judgment in favor of my client. I wanna also point out one thing. I understand Bank of America's frustration with CLD. Nobody better than my client understands that frustration but CLD was wrong and they lost. They lost the arbitration. They were wrong in claiming that my client did something wrong. We were right and so the problem is that there was a bounty over my client's head. The bounty was 05% and that bounty was created by Bank of America. Bank of America said, CLD, if this closes, you get the 05% and so when CLD turns around and says this should have closed, you did not have the ability not to close with Bank of America vis-a-vis CLD. The bounty created liability for my client but Bank of America, now that we won, after they paid indemnification, they turn around and sue CLD for this money and indeed, that's an affirmative defense that they raised unlike the affirmative defense of failure of condition preceding the construction of a contract and that's all I have to say. Thank you. Thank you.